Josefa Maria VERAS–MEJIA et al., Plaintiffs,

v.

Peter F. BRENNAN, Secretary of Labor, et al., Defendants.

No. 74 Civ. 3727(MP).

United States District Court, S. D. New York.

Aug. 25, 1976.

---

Antonio C. Martinez, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, by Lydia E. Morgan, and Mary P. Maguire, Special Asst. U. S. Attys., for defendants.

## OPINION

POLLACK, District Judge.

Thirty Western Hemisphere aliens who seek admission to the United States have brought this action to obtain the benefits of an order entered in a previous class litigation, *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir.), *rev'g* 337 F.Supp. 1289 (S.D.N.Y.1972). The application of that order to these plaintiffs presents complex issues which the parties seek to resolve on cross-motions for summary judgment. For the reasons which appear hereafter, the defendants' motion for summary judgment is granted in part and denied in part, and the plaintiffs' cross-motion is denied in all respects.

A discussion of both the *Lewis-Mota* suit and the relevant part of the statutory scheme governing immigration is a prerequisite to a comprehensible analysis of plaintiffs' claims in this action. It will also be helpful to discuss the claims of plaintiffs 1 through 9 separately from those of plaintiffs 10 through 30, for the thirty plaintiffs have disparate positions.

### A. The Immigration Process

A Western Hemisphere alien who seeks to come to the United States and plans to enter the American work-force is required, to be eligible for a visa, to obtain a certificate from the Secretary of Labor determin-

ing that there is a need for workers in the alien's field which Americans cannot fill and that the alien's employment will not adversely affect Americans similarly employed. 8 U.S.C. § 1182(a)(14).

An alien may procure such a certificate in a proper case by presenting proof that he has an actual offer of employment in the United States. 29 C.F.R. § 60.3(c) (1975). To expedite the administration of the labor certification system, however, the Secretary of Labor published three schedules in 1965 and 1967 which set forth categories of employment as to which a determination of the state of the American labor market had been made. *See Lewis-Mota v. Secretary of Labor, supra*, 337 F.Supp. at 1291 n. 1. Thus, if a scheduled category applies to him, an alien may obtain a labor certificate merely by demonstrating his qualifications for one of the occupations listed in the published schedule without needing to submit proof of a specific job offer. 29 C.F.R. §§ 60.2, 60.3(a) (1975). This alternative process is called precertification.

Once an alien has complied with the labor certification requirement (or established the applicability of certain exemptions thereto, not relevant here), his visa application is assigned a "priority date." This date determines the alien's place in line for the limited number of visas which are allotted to the many American consulates each month. Given the substantial backlog of visa applications, it may take as long as two years for an alien's application to be reached in the consulate's processing. The application is reached when a visa becomes available to the alien, as determined by the priority date of his application. When applications with his priority date have been reached, an appointment is made for an interview with consular officials at which the alien is given the opportunity to show that he meets all the eligibility requirements for a visa.

## B. The Lewis-Mota Litigation

On February 9, 1970 the Secretary of Labor issued a Directive which suspended the Schedule C precertification list, one of the schedules previously published, and pro-

vided that previously issued certifications pursuant to that schedule would be valid only for a year from the date of their issue or until June 30, 1970, whichever was later. *See Lewis-Mota v. Secretary, supra*, 469 F.2d at 480. The Secretary had neglected to first publish this order in the Federal Register, and indeed did not do so until February 4, 1971. 34 Fed.Reg. 2462 (1971). The *Lewis-Mota* plaintiffs, who had relied upon Schedule C to establish their compliance with the labor certification requirement, challenged the Secretary's failure to publish the Directive as a violation of the Administrative Procedure Act, 5 U.S.C. §§ 552, 553. The Court of Appeals sustained their position, and declared "the Directive invalid until 30 days after it was actually published on February 4, 1971, but valid thereafter." *Id.* at 482.

Thus, those aliens who were improperly deprived of their Schedule C labor certification in the period from the date their certification expired pursuant to the invalid Directive until March 4, 1971, when the Directive became legally effective, were afforded relief by the *Lewis-Mota* decision. However, only those aliens for whom visas would have become available in that period were actually harmed by the improper Directive; those who would still have been on the visa waiting list until after March 4— those whose applications' "priority dates" would not have been reached in that time period—were in no way affected by the defectively-promulgated order. Accordingly, on remand the District Court entered a judgment which defined the *Lewis-Mota* class as consisting of

. . . all those aliens who establish, to the satisfaction of the appropriate consular officer, by the production of their original labor precertification endorsed by a consular officer or a true copy thereof, that they were precertified or certified under Schedule C Lists published on or before January 23, 1969, and further, that their priority position would have been reached by March 4, 1971. . . .

Class members, upon applying for a visa within two years from the date of the judg-

ment, were to be deemed to have satisfied the labor certification requirement. The 30 plaintiffs in the instant suit, alleging that they were members of the *Lewis-Mota* class, apparently made timely applications for the benefits of the *Lewis-Mota* judg-. ment, but were refused. The present litigation followed.

## C. Plaintiffs 1 through 9

There is no dispute concerning the facts underlying the contentions of the first nine plaintiffs, and their claims are therefore ripe for summary judgment. Fed.R.Civ.P. 56(c). Each of the nine has a "priority date" which is at least as early as those of the named plaintiffs in *Lewis-Mota*, as to whom the defendants conceded that "their priority position[s] would have been reached by March 4, 1971."

Nonetheless, they are not entitled to the relief afforded the *Lewis-Mota* class, for they complied with the labor certification requirement by showing their qualifications for occupations which were removed from Schedule C by the Secretary of Labor prior to—and in an action totally unrelated to— the invalid Directive which suspended Schedule C entirely. In an amendment which was duly published in the Federal Register, the Secretary modified Schedule C on January 23, 1969 by deleting from it some 24 occupations, including the two— baker and practical nurse—for which these nine plaintiffs had qualified prior to the amendment. 33 Fed.Reg. 17244 (1968) (notice of proposed rulemaking); 34 Fed.Reg. 1018 (1969).

Thus, it was not the Secretary's improper suspension of Schedule C on February 9, 1970 which prevented these plaintiffs from obtaining visa processing appointments in the period prior to March 4, 1971, but simply the loss of their labor certification as a consequence of the January 23, 1969 removal from Schedule C of their type of occupation. That 1969 amendment was in no way challenged in *Lewis-Mota*, and indeed, plaintiffs do not contest its validity; however, they claim that the amendment may not properly be applied retroactively to deprive them of the certification they had already obtained under the previous version of Schedule C.

■ Plaintiffs' contention that once an alien is certified, he remains certified forever—that his certification represents a vested right which is unaffected by changes in the American labor market which occur subsequent to the alien's certification but prior to the issuance of his visa—cannot withstand any serious scrutiny. Any rights the plaintiffs enjoy must be derived from the regulation pursuant to which they obtained their labor certification. Yet far from supporting their claim to a vested interest, the regulation noted that

> Schedule C is reviewed continuously to be sure that the list will be kept current. If information shows adverse effects are occurring from the use of immigrant workers, or if an adequate supply of qualified workers becomes available, the occupation will be removed from Schedule C promptly. 32 Fed.Reg. 867 (1967).

While this language does not explicitly indicate that such deletions would be given retroactive effect, that interpretation is compelled by reference to the statute pursuant to which the regulation was issued, which provides that eligibility for labor certification shall be determined "at the time of application for a visa and admission to the United States. . . ." 8 U.S.C. § 1182(a)(14). The protection of the American labor market which Congress clearly sought to achieve in enacting § 1182(a)(14) would be completely eviscerated were plaintiffs' interpretation to prevail, for vast changes could take place in the domestic economy between the time that an alien initially obtains a labor certification and the date, perhaps two years later, when a visa finally becomes available to him.

■ Plaintiffs' interest in their labor certifications pursuant to the Schedule C of 1967 may be classified as a "regulatory entitlement." Like a statutory entitlement, see *Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), such a

protected interest may continue to exist only so long as the regulation or statute which created it remains in effect, at least where the regulation contains no indicia of permanency upon which plaintiffs might justifiably have relied. The 1969 amendment which deleted plaintiffs' occupations from Schedule C thus terminated plaintiffs' entitlement to the precertification.

The inclusion in the *Lewis-Mota* class of aliens who were "certified under Schedule C Lists published on *or before* January 23, 1969" (emphasis supplied) does not disturb the result reached here, for the *Lewis-Mota* plaintiffs who were certified under the 1967 Schedule C were qualified in occupations which were retained by the 1969 amendment to Schedule C. Unlike the instant plaintiffs, they continued to enjoy valid labor certifications and thus would have been entitled to have their visa applications processed in the absence of the Secretary's improper February 1970 directive.

### D. Plaintiffs 10 through 30

The remaining 21 plaintiffs—numbered 10 through 30—have a status different from numbers 1 through 9 in the context of the *Lewis-Mota* judgment in two important respects. First, their occupations were not among the 24 categories which were deleted from the 1967 Schedule C by the 1969 amendment of that regulation. Second, their "priority dates" are at least eight months later than those of the first nine plaintiffs. Thus, while the continued validity of their labor certification is not disputed, the question of whether their priority dates "would have been reached by March 4, 1971" is hotly contested.

Plaintiffs have submitted a Department of State circular of February 1971 which shows that visas became available in March of that year, the relevant time under the *Lewis-Mota* judgment, to Western Hemisphere nationals whose priority dates were earlier than March 1, 1970. Since each of the 21 have priority dates in advance of March 1, 1970—17 of the 21 have priority dates in January 1970, and the latest priority date of the remainder of the 21 is February 10, 1970—they contend that a visa would have become available to them on or before March 4, 1971.

The State Department takes a considerably more sophisticated approach to the question. It points out that the priority dates which would have been reached in March 1971 could not possibly be identical to the priority dates which were actually reached at that time, for a large number of visa applicants—the *Lewis-Mota* class—had been excluded from the visa processing waiting list; if they had been included in the pool, the backlog of applicants would have been that much greater, and accordingly applicants with a priority date as late as March 1, 1970 would not have been reached by March 4, 1971.

The defendants have submitted an affidavit from the Chief of the Immigrant Visa Control Branch of the State Department's Visa Office which supports this argument. The affidavit asserts that there was a dramatic acceleration in the rate at which priority dates were reached for visa appointments after the Secretary of Labor's improper February 1970 directive excluded Schedule C applicants from the waiting list. In the year preceding that Directive the priority dates which were reached for visa processing advanced 18 weeks, while in the year succeeding the Directive there was an advancement of some 52 weeks.

Drawing on the experience of the progress of the waiting list in the year prior to the Directive, the State Department has calculated that only applicants with priority dates of November 22, 1969 or earlier would have been reached by March 4, 1971 had the wrongly excluded Schedule C applicants been included in the pool at that time. The Department concluded, however, that "any benefit of doubt should be given the applicants concerned" and therefore selected a cut-off priority date of January 1, 1970 to identify those who would have been reached by March 4, 1971. All of the 21 plaintiffs have priority dates after January 1, 1970, and therefore, under the State Department's cut-off date determination, are not entitled to *Lewis-Mota* relief.

While the position of the plaintiffs appears untenable in light of the inferences from the proof submitted by the defendants, the cut-off date selected by defendants, which denies by only a few days plaintiffs' entitlement to relief, also appears doubtful. First, the State Department has not disclosed the precise calculations by which it arrived at its November 22, 1969 date (which it extended to January 1, 1970 to give applicants the benefit of doubt); the date does not appear to be merely a pro rata extrapolation of the processing rate which existed in the 12 months immediately preceding the illegal Directive. Second, and more telling, the Immigrant Visa Control Chief admitted in a deposition submitted as part of the record on these motions that there was no "factual basis" for the selection of the January 1, 1970 date.

Equally significant, that deposition indicated that a number of factors which the State Department did not consider in its computation may have contributed to the acceleration in the visa application process in 1970–71 wholly apart from the exclusion of the Schedule C applicants. Variables such as a change in economic conditions in Latin America or in the likelihood of a military service obligation for immigrants to the United States may affect the number of applicants who refrain from seeking a visa once one has become available to them, and thus would affect the progress of the waiting list. To the extent that the speed-up in processing occurred independently of the exclusion of the Schedule C applicants, the instant 21 plaintiffs are entitled to a calculation of the relevant priority date which takes such an acceleration into account.

█ Since there is clearly a genuine issue of material fact concerning the priority date which would have been reached by March 4, 1971 in the absence of the Directive held illegal in *Lewis-Mota*, neither the defendants' nor the plaintiffs' motion for summary judgment may be granted in regard to plaintiffs 10 through 30. Nonetheless, the parties have informally indicated that there is little in the way of

additional evidentiary matter which may be adduced at a trial to shed further light on the issue. The parties may therefore find it appropriate to stipulate that to the extent factual data is contained in the papers submitted on the instant motions the same shall constitute the trial record on which the Court should resolve the disputed issue of fact.

█ Whether or not further evidence is forthcoming, the Court in making its determination shall take note of the equitable principle that "the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed.2d 652 (1946). It was the conduct of the defendants, held illegal in *Lewis-Mota*, which has created the uncertainty in ascertaining what the status of these 21 plaintiffs "would have been" five years ago. It would therefore be appropriate to resolve any uncertainty against the defendants. See *United States ex rel. Schuster v. Vincent*, 524 F.2d 153, 160 (2d Cir. 1975). While this doctrine is often applied in the context of a determination of damages known to have been caused in some uncertain amount by the defendant, see, e. g., *Perma Research & Development v. The Singer Co.*, Slip Op. No. 715, No. 75–7362 (2d Cir., July 1, 1976) at 4653; *Autowest, Inc. v. Peugeot, Inc.*, 434 F.2d 556, 565 (2d Cir. 1970), it is a broad and "ancient principle," *Bigelow v. RKO Radio Pictures, Inc., supra*, which is by no means confined to such cases, see *United States ex rel. Schuster v. Vincent, supra*.

Accordingly, the defendants' motion for summary judgment in their favor is granted as against the plaintiffs 1 through 9 and judgment in favor of the defendants against said plaintiffs dismissing their complaint shall be entered forthwith, there being no reason for delay. Rule 54(b). The defendants' motion for summary judgment is denied as to plaintiffs 10 through 30; and the plaintiffs' cross-motion for summary judgment in their favor is denied. The parties should advise the Court within 15 days of the entry of this order whether they

wish to proceed with an evidentiary hearing or to stipulate that the case shall be deemed tried on the current record as indicated above.

SO ORDERED.